IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OVERSEAS PARTNERS RE LTD., ) | |
| ) | C.A. No. |
| Plaintiff, ) | |
| vs. ) | **04-11936 RCL** |
| ) | |
| ACE AMERICAN INSURANCE COMPANY, ) | |
| ACE PROPERTY AND CASUALTY INSURANCE ) | |
| COMPANY, ACE INA GROUP OF COMPANIES and ) | |
| STATE STREET BANK & TRUST COMPANY ) | |
| ) | |
| Defendants. ) | |
| ) | |

## VERIFIED COMPLAINT FOR
## INJUNCTION IN AID OF ARBITRATION

### INTRODUCTION

1.     This action involves the reinsurance business.  It arises from an attempt by defendants ACE American Insurance Company, ACE Property and Casualty Company, and ACE INA Group of Companies (collectively "ACE") to subvert an arbitration clause in its agreement with Overseas Partners Re Ltd. ("OP Re").  A dispute exists between OP Re and ACE relating to ACE's obligations with regard to certain collateral posted by OP Re pursuant to its agreement with ACE.  After breaching its agreement with OP Re, ACE is attempting to engage in prohibited self-help, seeking to seize the very collateral that is in dispute.  If allowed to do so, ACE would fundamentally alter the status quo between the parties before their dispute can be resolved in accordance with the regular contractual arbitration procedures.

### PARTIES

2.     Overseas Partners Re Ltd. ("OP Re") is a Bermuda corporation with its principal place of business at Cumberland House, 1 Victoria Street, Hamilton, Bermuda.  A subsidiary of



Overseas Partners Ltd., also based in Bermuda, OP Re is a reinsurance company.

3.      ACE American Insurance Company is a Pennsylvania corporation with its principal place of business at 1601 Chestnut Street, Philadelphia, Pennsylvania. ACE Property and Casualty Insurance is also a Pennsylvania corporation with its principal place of business at 1601 Chestnut Street, Philadelphia, Pennsylvania. The companies are subsidiaries of ACE INA Group of Companies.

4.      State Street Bank & Trust Company ("State Street") is a national banking association with its principal place of business at 225 Franklin Street, Boston, Massachusetts. State Street issued the letter of credit at issue in this action.

## JURISDICTION AND VENUE

5.      Federal jurisdiction exists in this case under 28 U.S.C. §1332(b)(2) in that it is an action between citizens of a State and citizens or subjects of a foreign state and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Venue is proper in this district under 28 U.S.C. §1391 in that State Street resides here, the letter of credit at issue originated here, and here is where State Street received ACE's sight draft to draw on the letter of credit.

## FACTS

**A.      OP Re's Treaty Of Reinsurance With ACE.**

7.      OP Re and ACE are parties to a reinsurance agreement known as the Space Quota Share Treaty (the "Treaty"), bearing contract no. BG 930900, effective April 1, 2000 until terminated. The Treaty reinsured ACE policies allocated to its Space Account, involving risks related to satellites. (Ex. 1.)

8.      The Treaty contains an arbitration clause covering all aspects of the parties'

2

dealings and provides, in pertinent part, as follows:

> [A]ny dispute arising out of the interpretation, performance or breach of this Contract, including formation or validity thereof, shall be submitted for decision to a panel of three arbitrators. Notice requesting arbitration will be in writing and sent certified mail, return receipt requested.

Article XXIX. (Ex. 1.)

**B.    The Treaty Endorsement.**

9.    By an endorsement to the Treaty, effective September 30, 2002, OP Re and ACE agreed to a commutation of a portion of the obligations and liabilities under the Treaty (the "Endorsement"). The remaining obligations (the "retained risks") were listed in a Schedule A to the Endorsement. (Ex. 2.)

10.    According to a Schedule B to the Endorsement, OP Re was required to post collateral of up to $19,615,606.00 in respect to the retained risks, and provided for the collateral to be in the form of a letter of credit or trust fund. (Ex. 2.)

11.    Schedule B to the Endorsement provides in pertinent part that:

> *The Reinsurer [OP Re] and Reinsured [ACE] agree that the Letter of Credit . . . may only be drawn upon if [OP Re] fails to pay a loss within 60 days of receiving notice of a paid loss in respect to the Secured Risks by [ACE] pursuant to the [Treaty] (the "Loss Notice").* Such notice shall include a copy of the loss occurrence notice sent by the relevant Name Insured, if available, and confirmation of payment of said loss by [ACE]. In the event of a draw down, [ACE] may only draw an amount equal to the loss payment due from [OP Re] pursuant to this paragraph.

(Ex. 2.) (emphasis added).

12.    Schedule B also provides that:

> *At quarterly intervals, [ACE] shall prepare a specific statement of the total OPRE Satellite Limit for the Secured Risks outstanding (the "Outstanding Limit") for the purpose of amending the Letter of Credit . . .* in the following manner:

(a)    If the statement shows that fifty percent (50%) of the Outstanding Limit exceeds US$19,615,606, [OP Re] shall within thirty (30) days after receipt of notice of such excess, secure delivery to [ACE] of an amendment to the Letter of Credit . . . increasing the amount of credit to US$19,615,606.

(b)    If, however, the statement shows that fifty percent (50%) of the Outstanding Limit is less than the balance of credit as of the statement date, *[ACE] shall, within thirty (30) days, release such excess credit by agreeing to secure an amendment to the Letter of Credit . . . reducing the amount of credit available by the amount of such excess credit.*

(Ex. 2.) (emphasis added).

## C.    The Letter of Credit.

13.    Pursuant to its obligations under the Endorsement, OP Re caused State Street to establish an Irrevocable Letter of Credit, No. ILC-1198/BSN, in favor of ACE for an amount up to $19,615,695.00 (the "Letter of Credit"). (Ex. 3.)

14.    The Letter of Credit provides for automatic renewal for a one year period upon October 31 of each year, unless notice of termination or non-renewal is given at least sixty (60) days prior to such date. (Ex. 3.)

15.    Despite its obligations under the Endorsement to make quarterly statements of the Outstanding Limit on the secured risks, ACE has never made such a statement. Consequently, there has been no compliance by ACE with its obligation to effect reductions of the Letter of Credit should the balance of credit exceed 50% of the Outstanding Limit.

## D.    Dispute Regarding Letter of Credit.

16.    On or about June 21, 2004, OP Re informed ACE that, not having received statements from ACE, OP Re had prepared its own statement of the Outstanding Limit. The spreadsheet prepared by OP Re indicated that the Outstanding Limit was $28,256,731. According to the Endorsement, the value of the Letter of Credit should not exceed 50% of the

4

Outstanding Limit. As a result, OP Re determined that the Letter of Credit was over-funded, and should be reduced from $19,615.695 to $14,128,365. (Ex. 4.)

17.    On or about July 26, 2004, OP Re sent a follow up communication to ACE requesting ACE's response to the statement of the Outstanding Limit prepared by OP Re and forwarded to ACE on June 21, 2004. (Ex. 5.)

18.    On or about August 24, 2004, ACE requested that OP Re forward bank wire instructions.  ACE made no reference to the statement of Outstanding Limit or ACE's obligations according to the Endorsement.  (Ex. 6.)  OP Re complied with ACE's request by forwarding wire transfer instructions and requested details on why ACE required these instructions. (Ex. 7.)

19.    Shortly thereafter, ACE sent an ACE-created spreadsheet to OP Re, without explanation, suggesting that the Letter of Credit balance should be $15,710,004, an amount which exceeded OP Re's calculations. (Ex. 8.)

20.    Based on the ACE spreadsheet, however, it was clear that the appropriate Letter of Credit balance was even less than OP Re's previous calculation. In particular, the schedule showed that, based on ACE's own numbers, the Letter of Credit balance should be $12,529,677, as opposed to OP Re's original figure of $14,128,365. (Ex. 9.)

21.    At or around this time, OP Re had been in the process of restructuring its entire collateral facilities. As part of this effort, it gave notice to ACE on or about August 25, 2004, that the Letter of Credit would be cancelled effective October 31, 2004 and a  replacement letter of credit, or other form of collateral, be established. (Exs. 10, 11.)

22.    On or about August 26, 2004, notwithstanding the fact that ACE had never provided OP Re with a notice of paid loss as required in Schedule B to the Endorsement, ACE

advised that it now intended to draw down the entire amount of the Letter of Credit and refund the "balance" of $3,905,602 to OP Re. (Ex. 12.)

23.    OP Re objected to ACE drawing on the Letter of Credit for an amount in excess of OP RE's share of settled and paid claims. (Ex. 11.) Based on ACE's revised spreadsheet, the amount of settled and paid claims equals only $9,349,351. The difference in figures arises from mathematical errors on ACE's spreadsheet involving the two "Anik F1" claims, which apparently have been only partially settled and paid by ACE, and the "Thuraya 1" claim, which has not yet been settled and paid.

24.    In particular, ACE took credit for having settled the Anik F1 claims at 67% of the sum insured when in fact documentation available to OP Re shows a settlement at only 49% of the sum insured. With regard to the Thuraya 1 claim, as it remains unsettled by ACE, ACE is not entitled to include it in the amount of its draw down.

25.    The numbers in ACE's revised spreadsheet also indicate that the balance of the Letter of Credit needs to be reduced. ACE's settlement of the Anik F1 claims provides that it will pay an additional amount (up to 17.67% of the sum insured) to be determined in 2007. The 2007 portion of the claim settlement could equal a maximum of $1,101,739. In addition, ACE's maximum exposure for the Thuraya 1 claim is $5,238,338. Thus, the Outstanding Limit equals $6,340,077 (assuming settlement of the paid claims of $9,349,351). According to the Endorsement the balance of the Letter of Credit should not exceed 50% of Outstanding Limit, which amounts to $3,170,039.

26.    Consequently, ACE is only entitled to a draw down on the Letter of Credit in the amount of $9,349,351 (assuming proof of paid claims in that amount) and is contractually required to obtain a reduction of the Letter of Credit to $3,170,039.

27.    On or about September 2, 2004, ACE improperly submitted a sight draft to State Street to draw $15,710,004.00 from the Letter of Credit. (Ex. 13.)

28.    OP Re has been informed by Mr. Edward Anderson of State Street that the bank intends to honor this sight draft at the "end of the day" on Tuesday, September 7, 2004.

29.    On or about September 3, 2004, OP Re demanded arbitration against ACE in this matter with respect to, inter alia, the Letter of Credit.  (Ex. 14.)

## COUNT I

30.    Op Re hereby restates and incorporates by reference its allegations in paragraphs 1 through 29 above.

31.    Under the parties' agreements, ACE is unquestionably required to submit to arbitration any dispute regarding administration or claims under the Treaty before exercising any disputed right under the treaty.  Arbitration is a "condition precedent to any right of action," including any self help in the form of drawing down on the Letter of Credit in whatever amount it chooses.

32.    In this matter, the dispute involves the Letter of Credit itself, as well as the parties' obligations with regard to it.

33.    Rather than comply with its obligations under the treaty and maintain the status quo while the issue is resolved through arbitration, ACE is now seeking improperly to draw down on the Letter of Credit, in effect destroying the very thing at issue.

34.    By doing so, ACE is ignoring its obligations under the Treaty and the Endorsement.  ACE's conduct is designed to alter irretrievably the status quo and thus infringe upon the power of the arbitration panel to render a meaningful decision.

35.    An injunction is necessary to prevent ACE from depriving the arbitration process of any validity.

36.    There is minimal or no risk of harm to ACE if it is prevented from destroying the subject matter of the arbitration. ACE agreed in the Treaty to submit disputes to arbitration, and cannot claim injury from being required to comply with its agreement. Moreover, if the arbitration panel determines that ACE's claims are bona fide, it will still be able either directly from OP Re or pursuant to a draw on the Letter of Credit to obtain what is owed. If, however, the arbitration panel finds in favor of OP Re, there would, of course, be no draw down on the Letter of Credit in excess of what ACE may be entitled to, and ACE would be required to obtain a reduction of the Letter of Credit as provided in the Endorsement.

WHEREFORE, Overseas Partners Re Ltd. respectfully requests that the Court enter temporary, preliminary and permanent injunctive relief:

a.    Enjoining ACE American Insurance Company, ACE Property and Casualty Insurance Companies, and ACE INA Group of Companies and all persons acting in concert with all or any one of them from making any call or demand for payment upon the letter of credit bearing no. ILC-1198/BSN, until such time as the respective rights of the parties are determined by the pending arbitration; and

b.    Enjoining State Street Bank & Trust Company and all persons acting in concert with it from honoring any call or demand for payment, or making any payment under the letter of credit bearing no. ILC-1198/BSN, until such time as the respective rights of the parties are determined by the pending arbitration.

Respectfully Submitted,

Rhonda L. Rittenberg, BBO# 550498
John E. Matosky, BBO# 641561
Prince, Lobel, Glovsky & Tye LLP
585 Commercial Street
Boston, MA 02109
(617) 456-8000

Attorneys for Plaintiff Overseas Partners Re Ltd.

Dated: ___9/3/04___

## VERIFICATION

I, Shari Conley-Barrett, hereby depose and say that I am Vice President and Corporate Counsel of Overseas Partners Re Ltd. and am authorized to make this verification on its behalf; that I have read the foregoing Verified Complaint for Injunction in Aid of Arbitration; and that, pursuant to 28 U.S.C. §1746(1), I declare under penalty of perjury under the laws of the United States that the facts stated therein are true and correct to the best of my knowledge.

Executed on this 3rd day of September 2004.

# EXHIBIT 13



**STATE STREET.**
Serving Institutional Investors Worldwide~

**September 3, 2004**

TO:  SHERI CONLEY-BARRETT

COMPANY:  OPL

PHONE NO:

FAX NO  :  441-292-9142

FROM  :  JOHN AMUZZINI

COMPANY:  STATE STREET BANK

PHONE NO:  617-662-7141

FAX NO  :  617-662-4201

RE: SIGHT DRAFT AND COVER LETTER FROM ACE AMERICAN INSURANCE COMPANY

PAGES INCLUDING THIS COVER PAGE:  3



**ace ina**

ACE INA
Credit Management
1601 Chestnut Street
Two Liberty Place, TL32B
Philadelphia, PA 19103-
0000

215.640.1857 *tel*
215.640.5612 *fax*

edward.mungiole@ace-ina.com
www.ace-ina.com

Edward A. Mungiole
*Assistant Vice President*

September 1, 2004

State Street Bank
225 Franklin Street
Boston, MA 02110
Attn: Global Trade Bank, STBY L/C Dept., 18ᵗʰ Fl.

RE: Standby Letter of Credit No. ILC-1198/BSN

To Whom It May Concern:

Pursuant to the terms and conditions of the original letter of credit no. ILC-1198/BSN dated October 23, 2002 opened for the account of Overseas Partners Re Ltd., and in favor of Ace American Insurance Company for an amount of Nineteen Million Six Hundred Fifteen Thousand Six Hundred Ninety Five and 00/100 U.S. Dollars (U.S. $19,615,695.00), we are enclosing our sight draft in the amount of Fifteen Million Seven Hundred Ten Thousand Four and 00/100 U.S. Dollars (U.S. $15,710,004.00).

We demand immediate payment of such draft via wire transfer to our account at Fleet National Bank, "Ace American Insurance Company Wire Account No. 9429031425", ABA# 011900445, Reference: Statellites or Michael McCue.

Please contact Janet Seng at (215) 640-4059 with any questions concerning our drawing.

Sincerely yours,

Edward A. Mungiole
Assistant Vice President
Ace American Insurance Company

Sep-03-04  11:13am    From-STATE STREET BANK                    T-534  P.02/03  F-570

Pay to

the order of

Dollars

State Street Bank

Boston

# EXHIBIT 14

**Prince, Lobel, Glovsky & Tye LLP**
Attorneys at Law

585 Commercial Street
Boston, MA 02109-1024

(617) 456.8000 Tel
(617) 456.8100 Fax
www.plgt.com

September 3, 2004

## VIA FACSIMILE, E-MAIL COMMUNICATION AND
## CERTIFIED MAIL/RETURN RECEIPT REQUESTED

Mr. Gerard P. Burke, Jr.
Mr. Edward A. Mungiole
ACE INA
2 Liberty Place
1601 Chestnut Street, TL 32B
Philadelphia, PA 19103

Re: **ARBITRATION DEMAND**
Treaty: Space Quota Share Reinsurance Contract No. B6930900
Effective 1 April 2000 ("Space Treaty")

Dear Mssrs. Burke and Mungiole:

Please be advised that we have been retained to represent the interests of Overseas Partners Re Ltd. ("OP Re") in the above-referenced matter. Pursuant to Article XXIX of the Space Treaty, OP Re hereby demands arbitration of any and all disputed issues with ACE American Insurance Company, ACE Property and Casualty Insurance Company for themselves and on behalf of each member of the ACE INA Group of Companies (collectively "ACE") under the Space Treaty referenced above.

Specifically, but not by way of limitation, OP Re will seek relief in the arbitration proceeding for ACE's breach of contract with respect to, inter alia, ACE's (a) failure to reduce the State Street letter of credit ("LOC") amount as required by the 26 September 2002 Endorsement to the Space Treaty ("Endorsement"); (b) efforts to improperly draw down on the LOC; and (c) failure to adhere to the Endorsement by providing requisite quarterly statements and loss notices. OP Re will also seek relief for ACE's breach of the duty of utmost good faith and fair dealing with regard to its conduct set forth above. OP Re reserves the right to amend its demand to reflect additional claims and/or relief as it deems appropriate.

OP Re intends to seek an order from the Panel requiring ACE to adhere to the proper interpretation and administration of the Space Treaty, including its contractual obligations under the Endorsement with respect to the LOC and/or other applicable collateral, quarterly statement and loss notices.

OP Re will also seek interest costs, attorneys fees and such other relief as the Panel deems appropriate.

 PRINCE ▴ LOBEL ▴ GLOVSKY & TYE ᴸᴸᴾ

**Prince, Lobel, Glovsky & Tye LLP**

Mr. Gerard P. Burke, Jr.
Mr. Edward A. Mungiole
September 3, 2004
Page 2

By setting forth the foregoing claims and relief to be sought, OP Re in no way shall be deemed to have waived any right to raise additional claims or seek further relief and expressly and fully reserves any and all such rights.

OP Re hereby requests ACE to appoint its arbitrator, advise the undersigned of his or her identity and provide a copy of a biography or curriculum vitae within 30 days of receipt of this letter. Failing such, OP Re will appoint an arbitrator on behalf of ACE as provided for by Article XXIX.

Thank you for your attention to this matter.

Very truly yours,

PRINCE, LOBEL, GLOVSKY & TYE LLP

Rhonda L. Rittenberg
RLR:rs

cc:    Marsh, Ltd. No. 1
       The Marsh Center
       London England
       E1 8DX

PRINCE.LOBEL.GLOVSKY & TYE ≘