IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

OVERSEAS PARTNERS RE LTD., )
  )
  Plaintiff, ) C.A. No.
vs. )
  ) 04-11936 RCL
ACE AMERICAN INSURANCE COMPANY, )
ACE PROPERTY AND CASUALTY INSURANCE )
COMPANY, ACE INA GROUP OF COMPANIES and )
STATE STREET BANK & TRUST COMPANY )
  )
  Defendants. )
  )

## DECLARATION OF PHILIP D. BIRKBY UNDER PENALTY OF PERJURY

I, Philip D. Birkby, declare under penalty of perjury as follows:

1. I am Vice President of Overseas Partners Re Ltd. ("OP Re"). As part of my duties and responsibilities, I supervise matters involving disputes over reinsurance obligations under various reinsurance contracts entered into by OP Re, including the contracts entered into between OP Re and the defendants ACE American Insurance Company, ACE Property and Casualty Insurance Company, and ACE INA Group of Companies (collectively, "ACE"). I make this affidavit based on personal knowledge.

2. OP Re and ACE are parties to a reinsurance agreement known as the Space Quota Share Treaty (the "Treaty"), bearing contract no. BG 930900, effective April 1, 2000 until terminated. The Treaty reinsured ACE policies allocated to its Space Account, involving risks related to satellites. A true and accurate copy of the Treaty wording is attached hereto as Exhibit 1.

3. By an endorsement to the Treaty, effective September 30, 2002, OP Re and ACE agreed to a commutation of a portion of the obligations and liabilities under the Treaty (the

1

"Endorsement"). The remaining obligations (the "retained risks") were listed in a Schedule A to the Endorsement. According to a Schedule B to the Endorsement, OP Re was required to post collateral of up to $19,615,606.00 in respect to the retained risks, and provided for the collateral to be in the form of a letter of credit or trust fund. A true and accurate copy of the Endorsement, including schedules, is attached hereto as Exhibit 2.

4.  Schedule B to the Endorsement provides in pertinent part that:

    The Reinsurer [OP Re] and Reinsured [ACE] agree that *the Letter of Credit... may only be drawn upon if [OP Re] fails to pay a loss within 60 days of receiving notice of a paid loss in respect to the Secured Risks by [ACE] pursuant to the [Treaty] (the "Loss Notice")*. Such notice shall include a copy of the loss occurrence notice sent by the relevant Name Insured, if available, and confirmation of payment of said loss by [ACE]. In the event of a draw down, [ACE] may only draw an amount equal to the loss payment due from [OP Re] pursuant to this paragraph.

    (Ex. 2, Schedule B (emphasis added)).

5.  Schedule B also provides that:

    *At quarterly intervals, [ACE] shall prepare a specific statement of the total OPRE Satellite Limit for the Secured Risks outstanding (the "Outstanding Limit") for the purpose of amending the Letter of Credit...* in the following manner:

    (a) If the statement shows that fifty percent (50%) of the Outstanding Limit exceeds US$19,615,606, [OP Re] shall within thirty (30) days after receipt of notice of such excess, secure delivery to [ACE] of an amendment to the Letter of Credit... increasing the amount of credit to US$19,615,606.

    (b) If, however, the statement shows that fifty percent (50%) of the Outstanding Limit is less than the balance of credit as of the statement date, *[ACE] shall, within thirty (30) days, release such excess credit by agreeing to secure an amendment to the Letter of Credit ... reducing the amount of credit available by the amount of such excess credit.*

    (Ex. 2, Schedule B (emphasis added)).

6.  Pursuant to its obligations under the Endorsement, OP Re caused State Street Bank & Trust Company to establish an Irrevocable Letter of Credit, No. ILC-1198/BSN, in favor of ACE

2

for an amount up to $19,615,695.00. A true and accurate copy of the Letter of Credit is attached hereto as Exhibit 3.

7. The Letter of Credit provides for automatic renewal for a one year period upon October 31 of each year, unless notice of termination or non-renewal is given at least sixty (60) days prior to such date. (Ex. 3.)

8. Despite its obligations under the Endorsement to make quarterly statements of the Outstanding Limit on the secured risks, ACE has never made such a statement. Consequently, there has been no compliance by ACE with its obligation to effect reductions of the Letter of Credit should the balance of credit exceed 50% of the Outstanding Limit.

9. On or about June 21, 2004, OP Re informed ACE that, not having received statements from ACE, OP Re had prepared its own statement of the Outstanding Limit. The spreadsheet prepared by OP Re indicated that the Outstanding Limit was $28,256,731.00. According to the Endorsement, the value of the Letter of Credit should not exceed 50% of the Outstanding Limit. As a result, OP Re determined that the Letter of Credit was over-funded, and should be reduced from $19,615.695.00 to $14,128,365.00. A true and accurate copy of the email from Philip Birkby to Gerard Burke, dated June 21, 2004, is attached hereto as Exhibit 4.

10. On or about July 26, 2004, OP Re sent a follow up communication to ACE requesting ACE's response to the statement of the Outstanding Limit prepared by OP Re and forwarded to ACE on June 21, 2004. A true and accurate copy of the email from Philip Birkby to Gerard Burke, dated July 26, 2004, is attached hereto as Exhibit 5.

11. On or about August 24, 2004, ACE requested that OP Re forward bank wire instructions. ACE made no reference to the statement of Outstanding Limit or ACE's obligations according to

the Endorsement. A true and accurate copy of the email from Gerard Burke to Philip Birkby, dated August 24, 2004, is attached hereto as Exhibit 6.

12. OP Re complied with ACE's request by forwarding wire transfer instructions and requested details on why ACE required these instructions. A true and accurate copy of the email from Philip Birkby to Gerard Burke, dated August 24, 2004, is attached hereto as Exhibit 7.

13. Shortly thereafter, ACE sent an ACE-created spreadsheet to OP Re, without explanation, suggesting that the Letter of Credit balance should be $15,710,004, an amount which exceeded OP Re's calculations. A true and accurate copy of the email from Gerard Burke to Philip Birkby, dated August 24, 2004, is attached hereto as Exhibit 8.

14. Based on the ACE spreadsheet, however, it was clear that the appropriate Letter of Credit balance was even less than OP Re's previous calculation. In particular, the schedule showed that, based on ACE's own numbers, the Letter of Credit balance should be $12,529,677, as opposed to OP Re's original figure of $14,128,365. A true and accurate copy of the email from Philip Birkby to Gerard Burke, dated August 25, 2004, is attached hereto as Exhibit 9.

15. At or around this time, OP Re had been in the process of restructuring its entire collateral facilities. As part of this effort, it gave notice to ACE on or about August 25, 2004, that the Letter of Credit would be cancelled effective October 31, 2004 and a replacement letter of credit, or other form of collateral, be established. A true and accurate copy of the emails from Philip Birkby to Gerard Burke, dated August 25, 2004 and August 26, 2004, are attached hereto as Exhibits 10 and 11, respectively.

16. On or about August 26, 2004, notwithstanding the fact that ACE had never provided OP Re with a notice of paid loss as required in Schedule B to the Endorsement, ACE advised that it now intended to draw down the entire amount of the Letter of Credit and refund the "balance" of

4

$3,905,602 to OP Re. A true and accurate copy of the email from Gerard Burke to Philip Birkby, dated August 26, 2004, is attached hereto as Exhibit 12.

17. OP Re objected to ACE drawing on the Letter of Credit for an amount in excess of OP RE's share of settled and paid claims. (Ex. 11.) Based on ACE's revised spreadsheet, the amount of settled and paid claims equals only $9,349,351. The difference in figures arises from mathematical errors on ACE's spreadsheet involving the two "Anik F1" claims, which apparently have been only partially settled and paid by ACE, and the "Thuraya 1" claim, which has not yet been settled and paid.

18. In particular, ACE took credit for having settled the Anik F1 claims at 67% of the sum insured when in fact documentation available to OP Re shows a settlement at only 49% of the sum insured. With regard to the Thuraya 1 claim, as it remains unsettled by ACE, ACE is not entitled to include it in the amount of its draw down.

19. The numbers in ACE's revised spreadsheet also indicate that the balance of the Letter of Credit needs to be reduced. ACE's settlement of the Anik F1 claims provides that it will pay an additional amount (up to 17.67% of the sum insured) to be determined in 2007. The 2007 portion of the claim settlement could equal a maximum of $1,101,739. In addition, ACE's maximum exposure for the Thuraya 1 claim is $5,238,338. Thus, the Outstanding Limit equals $6,340,077 (assuming settlement of the paid claims of $9,349,351). According to the Endorsement the balance of the Letter of Credit should not exceed 50% of Outstanding Limit, which amounts to $3,170,039.

20. Consequently, ACE is only entitled to a draw down on the Letter of Credit in the amount of $9,349,351 and is contractually required to obtain a reduction of the Letter of Credit to $3,170,039.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON SEPTEMBER 1, 2004.

_____
Philip D. Birkby